**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert J. WHITE, Defendant–Appellant.**

No. 92–2044.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 1, 1992.

Decided May 19, 1993.

Barry R. Elden, Richard K. Kornfeld (argued), Asst. U.S. Attys., Crim. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

Anthony Pinelli, Chicago, IL (argued), for defendant-appellant.

Before BAUER, Chief Judge, POSNER, Circuit Judge, and WILL, Senior District Judge.[1]

BAUER, Chief Judge.

On October 1, 1991, Robert White pleaded guilty to a one-count information charging him with bank fraud in violation of 18 U.S.C. § 1344. White's plea waived his right to a grand jury indictment and he was sentenced to imprisonment and ordered to pay restitution. White raises three challenges to his sentence. We affirm.

I.

As set forth in the plea agreement, White acknowledged that he demanded and received illegal kickbacks while employed as a loan officer at Boulevard National Bank in Chicago. In the plea agreement and his account of the crime contained in the Probation Department's presentence investigation report (PSI), White admitted misconduct in loan transactions that exceeded $105,000. The government's official version of White's misconduct, also included in the PSI, described additional relevant conduct raising the total of alleged illegal loans to over $273,000. According to the government's version, White encouraged unqualified borrowers to provide false information on their loan applications, engineered other kickback arrangements, and devised a blackmail scheme which garnered White an additional $10,000.

The probation officer concluded in the PSI that the total loss attributable to White's wrongdoing was $215,583.52 and determined that White would be able to make a lump sum payment of $11,218, as well as smaller installment payments toward restitution. The probation officer refused to recommend the two-point reduction in White's offense level for acceptance of responsibility because White exhibited little concern for the victims' feelings and was not forthcoming with the Federal Bureau of Investigation until confronted with the results of the government's investigation. The probation officer also stated that White's denials of relevant conduct directly contradicted information provided by the FBI, the United States Attorney, and the victims. White filed written objections to the PSI challenging the calculation of loss and the denial of the reduction for acceptance of responsibility.

At the sentencing hearing, the district court rejected White's challenges, adopted the PSI recommendations, and sentenced White to twenty-eight months imprisonment, followed by a three-year term of supervised release. The court also ordered White to pay $215,583.52 in restitution to the Bank. Restitution was ordered in installments, with payment amounts to be determined by the probation officer based on White's ability to pay and employment status after his release.

II.

White first argues that the district court erred in its calculation of the total amount of loss attributable to his conduct. Specifically, White denies wrongdoing as it pertains to the loans contained in the government's version of relevant conduct. Further, White claims that the crime charged defined the scope of relevant conduct and that even if he had instructed loan applicants to make false statements on their applications, that violation was not part of the charged offense. White asks us to remand for resentencing or, at a minimum, remand for an evidentiary hearing on the loss calculation. The government responds that when White declined the district court's offer of an evidentiary hearing on the issue of loss attributable to his conduct, he abandoned the opportunity to

1. The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation.

challenge the court's computation. Moreover, the government argues that because the activity was part of the same course of conduct which contributed to the loss suffered by the Bank, the district court properly included the relevant conduct losses in its calculation.

 White claims in his reply brief that, through his written objections, he has preserved his argument attacking the information upon which the amount of loss was calculated. We disagree. White dispensed with an evidentiary hearing designed to ascertain the amount of loss attributable to his conduct. The government was ready to present evidence and testimony. The district court was ready to hear that evidence. White's request that we remand for an evidentiary hearing is untimely. *See United States v. Haddon,* 927 F.2d 942, 952 (7th Cir.1991) (court conducted sentencing hearing at which both government and defendant could "hammer out" correct amount of loss—defendant obligated to "fight it out" at the hearing).

 Because he has waived the opportunity to attack the information presented to the district court, our inquiry is limited to whether the district court's factual finding—based on the PSI, White's version of the offense, the government's version of the wrongdoing, the victim impact statement describing additional losses, and White's statements and demeanor—was clearly erroneous. *Haddon,* 927 F.2d at 952; *United States. v. Herrera,* 878 F.2d 997, 1000 (7th Cir.1989). Sentencing Guideline § 2F1.1, governing crimes of fraud and deceit, requires the sentencing court to use the amount of loss, not the amount of fraud when computing the base offense level. *Haddon,* 927 F.2d at 951. Application Note 8 of that section, upon which we must rely to interpret and apply the Guidelines, *United States v. DeCicco,* 899 F.2d 1531, 1537 (7th Cir.1990), states that the court need only make a reasonable estimate

of loss in light of available information. Note 8 indicates that we interpret § 2F.1.1(b)(1) broadly, advising that an estimate may be based on an approximate number of victims, an average loss to each victim, or by more general factors such as a comparison to similar operations. The district court was in the best possible position to estimate the loss attributable to White's conduct. Because we are not left "with the definite and firm conviction that a mistake has been committed," we will not disturb the district court's calculation. *United States v. Brown,* 900 F.2d 1098, 1102 (7th Cir.1990) (quoting *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)).

White's next challenge presents a closer question. Arguing that the district judge misunderstood his remorse, White claims the refusal to reduce his offense level for acceptance of responsibility was improperly based upon his denial of uncharged relevant conduct. In his opening brief, White bemoans the fact that he did not assert his Fifth Amendment privilege against self-incrimination. He claims that the district court's reliance on his denials of relevant conduct places him in a no-win situation—either admit conduct he did not commit or be penalized for denying those acts. Brief for Appellant at 19.

At the time of White's sentencing in April 1992, Guideline § 3E1.1(a) required a defendant to accept responsibility for "his criminal conduct" to qualify for an offense level reduction. Application Note 1(c) of that section directed that the sentencing court consider the defendant's acceptance of responsibility for "the offense and related conduct."[2] Here, the district court specifically found that White did not exhibit remorse for his criminal conduct, but merely regret at being caught. In a statement immediately following that finding, however, the district judge expressed disgust with White's conduct as it

---

**2.** The Background Commentary to § 3E1.1 was amended November 1, 1990, to clarify that "related conduct" should be considered. The Second Circuit, in a decision issued prior to the November 1992 amendments, found that the Commission's use of "related conduct" rather than "relevant conduct," as found elsewhere in the Guidelines, indicated that the two terms were

not synonymous. *United States v. Oliveras,* 905 F.2d 623, 629–30 (2d Cir.1990). Perhaps in response to *Oliveras,* the 1992 amendment to Application Note 1(a), formerly 1(c), uses the term "relevant" rather than "related," suggesting that the two terms are interchangeable. *See* Application Note 1(a) to § 3E1.1 (1992).

related to the blackmail scheme—an incident described in the government's version of the offense and denied by White. Assuming that the district court based its refusal on incidents of relevant conduct rather than the offense charged, we must decide whether such reliance was proper.

The majority rule from other circuits is that this version of § 3E1.1 requires acceptance of responsibility for all related criminal conduct, not just the count of conviction.[3] *See United States v. Kinder,* 946 F.2d 362, 367 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2290, 119 L.Ed.2d 214 (1992) (White, J., dissenting from denial of certiorari in part because of an intercircuit split on this issue); *United States v. Herrera,* 928 F.2d 769, 774–75 (6th Cir.1991); *United States v. Munio,* 909 F.2d 436, 439–40 (11th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1393, 113 L.Ed.2d 449 (1991); *United States v. Gordon,* 895 F.2d 932, 936–37 (4th Cir.), *cert. denied,* 498 U.S. 846, 111 S.Ct. 131, 112 L.Ed.2d 98 (1990). *See also United States v. Ruth,* 946 F.2d 110, 113 (10th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1189, 117 L.Ed.2d 431 (1992) (affirmed refusal for defendant who did not accept responsibility for conduct in a dismissed, related count). Other circuits hold that conditioning acceptance of responsibility upon a confession of uncharged relevant conduct violates a defendant's right against self-incrimination. *See United States v. Piper,* 918 F.2d 839, 840–41 (9th Cir.1990); *United States v. Oliveras,* 905 F.2d 623, 628–29 (2d Cir.1990); *United States v. Perez–Franco,* 873 F.2d 455, 458–59 (1st Cir.1989). While we have not had occasion to specifically address whether consideration of relevant conduct in the context of a § 3E1.1 determination violates the Fifth Amendment, we have expressed agreement with the majority view. *See United States v. Cojab,* 978 F.2d 341, 343 (7th Cir. 1992). In *Cojab,* a criminal defendant refused to provide financial information to the probation office for PSI purposes. We concluded that refusal to grant a § 3E1.1 reduction, based on the defendant's failure to provide the information, did not penalize the

defendant for exercising his Fifth Amendment privilege against self-incrimination. We characterized the denial of an acceptance of responsibility reduction as a "denied benefit" rather than a "penalty," and reasoned that to hold § 3E1.1 unconstitutional would "say that defendants who express genuine remorse for their actions can never be rewarded at sentencing." *Id.* (quoting *United States v. Henry,* 883 F.2d 1010, 1012 (11th Cir.1989)). *See also United States v. Tolson, et al.,* 988 F.2d 1494 (7th Cir.1993) (Shadur, J., concurring) (no question that in practice § 3E1.1 regularly impinges on (though it may not violate) a defendant's opportunity to exercise the Fifth Amendment's privilege against self-incrimination as to conduct outside the scope of the guilty plea).

Prior to the amendment effective January 15, 1988, § 3E1.1(a) required only that the defendant accept responsibility for "the offense of conviction." The Sentencing Commission noted that the amendment changing "offense of conviction" to "criminal conduct" was intended to "clarify" § 3E1.1. U.S. Sentencing Commission Guidelines Manual C.20 (Nov. 1, 1990). The recent November 1, 1992 amendment to § 3E1.1, while effective after White's sentencing, offers a further clarification of the circumstances under which relevant conduct may be considered in an acceptance of responsibility determination. *See, e.g., United States v. Hicks,* 978 F.2d 722, 726 (D.C.Cir.1992) (refused to consider constitutional issue in light of amendment and remanded to reconsider whether defendant who was convicted of and admitted to one count, should have been denied reduction for claiming innocence of second count on which jury could not reach a verdict). Under the new version, the defendant must clearly demonstrate acceptance of responsibility for "his offense." The amended Application Note 1(a) to § 3E1.1 lists, as an appropriate consideration for the reduction, the truthful admission of "the conduct comprising the offense(s) of conviction. . . ." Note 1(a) continues:

---

3. We are troubled that neither party advised the Court of the substantial difference of opinion among the circuits on this issue. We note that,

on the eve of oral argument, White informed the Court of the Second Circuit's view with a Fed. R.App.P. 28(j) submission.

[A] defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a). A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility.

The most recent version of § 3E1.1, apparently accounting for Fifth Amendment concerns, continues to consider relevant conduct—albeit in a more limited manner.

In his interview with the probation officer, White neither exercised his Fifth Amendment privilege, nor remained silent. *See United States v. Frierson,* 945 F.2d 650, 655–56 (3d Cir.1991) (§ 3E1.1 implicates Fifth Amendment protections, but defendant must invoke the privilege and not falsely deny related conduct). White's oral statements and his written version of the offense vigorously denied the government's statement of relevant conduct. As a result, White exposed his denials of relevant conduct to the scrutiny of the district court.

 The sentencing court views a defendant's acceptance of responsibility from a "front row seat" and its determination will be accorded great deference. *United States v. Jones,* 983 F.2d 1425, 1434 (7th Cir.1993). White bears the burden of convincing us that the district court's decision is without foundation in order for us to reverse that decision. *United States v. Camargo,* 908 F.2d 179, 185 (7th Cir.1990). This he has not done. The district judge clearly did not believe White's protestations of innocence after considering the PSI, the government's account of events, the victim impact statement, and White's statements and demeanor. The district

judge also found that White did not accept responsibility for his actions and only exhibited regret because he was caught. A desire to minimize a criminal sentence is distinguishable from acceptance of responsibility—the former will not provide a basis for a § 3E1.1 reduction. *United States v. Franklin,* 902 F.2d 501, 506 (7th Cir.), *cert. denied,* 498 U.S. 906, 111 S.Ct. 274, 112 L.Ed.2d 229 (1990). *See also United States v. Escobar–Mejia,* 915 F.2d 1152, 1153 (7th Cir.1990) (a defendant accepts responsibility only when he "fesses up" to his actual offense). The district court properly considered White's denials of relevant conduct when deciding whether a § 3E1.1 reduction was warranted and did not commit clear error when it refused to grant a reduction for acceptance of responsibility.[4]

 Finally, White claims the district court's order of restitution is inappropriate because it is vague and unreasonable in light of his net worth. White is incorrect. To successfully attack a restitution order, White must establish that the district court assessment is an abuse of discretion. *United States v. Arvanitis,* 902 F.2d 489, 496 (7th Cir.1990). The Sentencing Guidelines contemplate full restitution whenever possible and the defendant must establish that full restitution is unwarranted under the circumstances to reduce or alleviate that obligation. 18 U.S.C. § 3663(a)(2). In its determination, the district court must also consider the financial status of the criminal defendant and his dependents. *Id. See also* 18 U.S.C. § 3664(a).

 Here, the district court's order is reasonable and, more importantly, workable. The PSI provided the requisite financial information. The court predicated restitution installment payments on White's employment status and ability to pay upon his release from prison. White's circumstances may change and the district court provided for

---

4. White also claims a quasi-presumption that he is entitled to a reduction because his conviction was obtained without the expense of a trial and the waste of judicial resources. This judicial economy argument is readily resolved. A guilty plea, while a factor to consider by the district judge, does not entitle White to an adjustment absent genuine acceptance of responsibility. *See* U.S.S.G. § 3E1.1 & Application Notes 1(c), 3 (1991).

that possibility through reassessment by the probation officer. Should a dispute arise later, the court stated that it would resolve any disagreements regarding restitution. The law requires White to make restitution of the losses attributable to his conduct and the district court did not abuse its discretion in ordering full restitution, with the terms determined upon his release.

### III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.