**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jerry K. PARTEE and Ellsworth Dismuke, Defendants– Appellants.**

Nos. 93–1448, 93–1802.

United States Court of Appeals, Seventh Circuit.

Argued April 18, 1994.

Decided Aug. 3, 1994.

Barry R. Elden, Asst. U.S. Atty., Keith Syfert (argued), Office of U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for U.S.

R. Craig Sahlstrom (argued), Rockford, IL, for Jerry K. Partee.

Barbara A. Leitner (argued), Marcia G. Shein, Miller & Shein, Atlanta, GA, for Ellsworth Dismuke.

Before CUMMINGS, MANION, and ROVNER, Circuit Judges.

MANION, Circuit Judge.

Jerry K. Partee pleaded guilty to possessing cocaine with intent to distribute. He was sentenced to 97 months in prison. He appeals his sentence claiming that the district court erred in giving him a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1 and in denying him a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E.1.1. Ellsworth Dismuke was convicted of conspiring to possess and distribute cocaine and possessing cocaine with intent to distribute. Dismuke was sentenced to 74 months in prison. He appeals his sentence, claiming that he was denied effective assistance of counsel at his sentencing hearing. We affirm Dismuke's sentence, but remand for resentencing of Partee.

## I. Facts

On January 15, 1991, Ellsworth Dismuke purchased an airline ticket for a flight leaving that night from Chicago to Houston and returning to Chicago early the next morning. Later that day Jerry K. Partee drove Dismuke from their hometown of Rockford, Illinois to Chicago's O'Hare Airport. In route, their car broke down. After telephoning for help, they continued to O'Hare in a different car. Dismuke, who missed his earlier flight because of the delay, arranged to take a later flight to Houston. Once in Houston, a call was made from the house where Dismuke was staying to Partee's residence in Rockford. Numerous additional calls between these two residences were made that day. Dismuke then went to a Federal Express office and presented a "FedEx box" for overnight shipment to a "Jack Clark" at Partee's residence. Dismuke then flew back to Chicago and returned home to Rockford.

Suspicious that the package contained contraband, the Federal Express employee contacted her security department. Federal Express agents intercepted the package at its distribution site in Memphis and found that it contained a white powdery substance. A field test by a drug agent indicated that the substance was cocaine. The Drug Enforcement Administration ("DEA") in Chicago was notified and the package was transferred to DEA agents. The DEA conducted a lab test which verified that the package contained 1,754 grams of nearly pure cocaine.

After Dismuke returned to Rockford, he contacted Partee to see if Partee had received the cocaine. He had not. This triggered three calls from Partee to Federal Express, interspersed with calls back to Dismuke. That afternoon, a DEA agent posing as a Federal Express employee delivered to Partee's residence the original FedEx box containing a "look-alike" substance. Shortly after the delivery at Partee's residence the agents executed a search warrant. The agents found Partee in his kitchen attempting to call Dismuke. The package of the "look-alike" substance was cut open on the kitchen table.

Based on these events, Dismuke and Partee were charged in a five-count indictment. Count one of the indictment charged them with conspiring to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846; count two with possessing cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1); counts three and four with traveling in interstate commerce in furtherance of the conspiracy in violation of 18 U.S.C. § 1952(a)(3); and count five with using interstate commerce to further the conspiracy in violation of 18 U.S.C. § 1952(a)(3).

Partee entered into a plea agreement with the government in which he pleaded guilty only to count two of the indictment and the government dismissed the remaining counts.

Dismuke pleaded not guilty and proceeded to trial. Before trial, the government also dismissed counts three through five of the indictment against Dismuke. After Dismuke's trial began, the government obtained a court order immunizing Partee and directing him to testify at Dismuke's trial. Partee refused and was held in civil contempt. Even without Partee's testimony, the jury convicted Dismuke on counts one and two.

The court sentenced Partee to 97 months in prison, giving him a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1, and denying him a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, because he refused to testify under a grant of immunity at Dismuke's trial. Partee appeals the enhancement and the denial of the reduction. Dismuke was sentenced to 74 months in prison. He appeals his sentence, claiming that he was denied effective assistance of counsel at his sentencing hearing because his attorney did not seek reductions for "aberrant behavior" and for "minor participation" in the offense.

## II. Analysis

### A. Partee's Appeal

#### 1. Obstruction of justice.

■ The district court enhanced Partee's sentence by two levels for obstruction of justice under Section 3C1.1 of the Sentencing Guidelines. As a basis for this enhancement, the district court relied on Partee's refusal to testify under a grant of immunity at Dismuke's trial. Partee contends that the sentencing judge improperly imposed the two-level enhancement because his refusal to testify at his co-conspirator's trial was not an obstruction of justice for "the instant offense" as required under Section 3C1.1. We agree.

Section 3C1.1 of the Sentencing Guidelines provides that: "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." This court has defined "the instant offense" to refer "solely

to the offense of conviction." *United States v. Polland,* 994 F.2d 1262, 1269 (7th Cir. 1993). *See also, United States v. Gunning,* 984 F.2d 1476, 1485 (7th Cir.1993) ("§ 3C1.1 provided for a two-level enhancement of the offense level if the defendant 'willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing' of *the offense of conviction.*"). "Offense of conviction" in turn refers only to the " 'offense conduct charged in the count of the indictment or information of which the defendant was convicted.' " *United States v. Rubin,* 999 F.2d 194, 196 (7th Cir.1993) (quoting U.S.S.G. § 1B1.2(a)). *Accord, United States v. Jennings,* 991 F.2d 725, 733 (11th Cir.1993) ("offense of conviction" refers "only to the conduct charged in the indictment for which the defendant was convicted"). "Offense of conviction" does not refer to a separate crime by someone else. *See United States v. Haddad,* 10 F.3d 1252, 1260–61 (7th Cir.1993) (obstruction enhancement requires the defendant to act with "specific intent 'to avoid responsibility' for the offense for which *he* was being tried"); *Polland,* 994 F.2d at 1269 ("section 3C1.1 does not contemplate enhancements for obstruction of justice if the relevant conduct impedes the investigation or prosecution of a separate crime"). Here, Partee's "offense of conviction" was possession of cocaine with intent to distribute. Partee's refusal to testify at Dismuke's trial had no impact on *his* possession conviction and, therefore, Partee did not attempt "to avoid responsibility for the offense for which *he* was being tried." *See United States v. Haddad,* 10 F.3d at 1266.

In *United States v. Banks,* 751 F.Supp. 1161, 1166 (M.D.Pa.1990), *aff'd,* 931 F.2d 52 (3d Cir.1991), the court followed this reasoning and concluded that an obstruction enhancement does not apply "where the defendant testifies untruthfully in the case of another defendant." The Second Circuit later adopted this view in *United States v. Valdez,* 16 F.3d 1324, 1336 (2d Cir.1994) quoting from *Banks:* " 'we are of the view that the term "instant offense" as used in the commentary and the guideline itself is probably limited to the offense or case against the defendant ...

and does not encompass the case against [the codefendant]'" (quoting *United States v. Banks,* 751 F.Supp. at 1166).[1]

The government maintains that "instant offense" as used in the Guidelines should encompass not only the defendant's own proceedings but those of a co-conspirator. In support of its position the government cites cases which broadly define "instant offense." For example, in *United States v. Bernaugh,* 969 F.2d 858, 861 (10th Cir.1992), the court concluded that because the Guidelines provide that an "'offense' may include the concerted criminal activity of multiple participants ... the section 3C1.1 enhancement applies where a defendant attempts to obstruct justice in a case closely related to his own, such as that of a codefendant." *Accord, United States v. Acuna,* 9 F.3d 1442, 1446 (9th Cir.1993). Similarly, in *United States v. Morales,* 977 F.2d 1330, 1331 (9th Cir.1992), the Ninth Circuit held that a defendant's refusal to testify at a co-conspirator's trial after an immunity order has been issued constitutes an obstruction of justice because the prosecutions of both conspirators involved "the same conduct."

In these cases, the Ninth and Tenth Circuits essentially define the term "instant offense" to include "relevant conduct." "Relevant conduct" includes

> all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured or willfully caused by the defendant; and in the case of a jointly undertaken criminal activity, ... all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the

course of attempting to avoid detection or responsibility for that offense.

§ 1B1.3(a)(1)(A), (B). Applying the relevant conduct provision to the "offense of conviction" creates an expansive view of conduct which looks "'to the totality of the criminal transaction in which the defendant participated and which gave rise to his indictment, without regard to the particular crimes charged in the indictment.'" *United States v. Ignancio Munio,* 909 F.2d 436, 438 (11th Cir.1990) (quoting *United States v. Scroggins,* 880 F.2d 1204, 1209 n. 12 (11th Cir. 1989)). For example, in the section computing criminal history, the Guidelines define "instant offense" broadly: "conduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of § 1B1.3 (Relevant conduct)." U.S.S.G. § 4A1.2, comment (n. 1).

Had "instant offense" been defined for purposes of Section 3C1.1 of the Sentencing Guidelines, or by this court, to include "relevant conduct," the government's reliance on *Bernaugh,* 969 F.2d at 861, and *Morales,* 977 F.2d 1330, would be persuasive.[2] But this court has opted against defining "instant offense" broadly and has instead defined it narrowly as "offense of conviction," *United States v. Haddad,* 10 F.3d at 1261; *Polland,* 994 F.2d at 1269, and "offense of conviction" refers only to the "'offense conduct charged in the count of the indictment or information of which the defendant was convicted.'" *Rubin,* 999 F.2d at 196 (quoting U.S.S.G. § 1B1.2(a)). *See also, Jennings,* 991 F.2d at 733. We are bound by this definition, and applying it here we conclude that a defendant cannot receive an enhancement for ob-

---

1. After recognizing this principle, the *Valdez* court differentiated itself from *Banks.* The *Valdez* court noted that in *Banks* the defendant's perjury only related to his co-defendant's case and was thus unrelated to "his 'instant offense.'" *Valdez,* 16 F.3d at 1336. In *Valdez,* however, the defendant perjured himself at the trial of a co-conspirator while the government was investigating his own involvement in that conspiracy. *Id.* Therefore, the court concluded that the perjury not only obstructed the prosecution of his co-conspirator but it also obstructed the government's investigation of *his* offense. *Id.*

2. The government also cites *United States v. Williams,* 922 F.2d 737, 739 (11th Cir.1991), in support of its position. In *Williams,* the court stated, without citation and without analysis, that a defendant's "refusal to testify at a co-conspirator's trial after an immunity order had been issued clearly constituted conduct within [section 3C1.1.]." The *Williams* court, however, did not define "instant offense" as "offense of conviction" as has this court. Therefore, it is also inapposite.

struction of justice for refusing to testify at a co-conspirator's trial.[3]

Our conclusion finds support in other circuits which have defined, as this circuit has, "instant offense" as "offense of conviction." For example, in *United States v. Kim*, 27 F.3d 947, 958 (3d Cir.1994), the Third Circuit defined "instant offense" as "offense of conviction"[4] and then held that "in order for the district court to apply a two-level upward adjustment, the facts showing Kim's obstruction must relate to the offense of possessing methamphetamine with the intent to distribute, of which he was convicted, or its investigation, prosecution, or sentencing" and not some other offense. *Id. United States v. Perdomo*, 927 F.2d 111, 118 (2d Cir.1991), also defined "instant offense" as "offense of conviction" and similarly concluded that "conduct outside the charged offense should not have been considered under this [3C1.1] section." Similarly, here, the obstructive conduct, i.e. refusing to testify at a co-conspirator's trial, did not relate to Partee's charged offense—the offense of conviction. This does not mean that a defendant's disregard for a court order to testify under a grant of immunity will go unpunished; a district court could sentence a defendant to imprisonment for criminal contempt of court. 18 U.S.C. § 401. *See, e.g., United States v. Monteleone*, 804 F.2d 1004, 1011 (7th Cir.1986) (affirming criminal contempt sentence of four years in prison for defendant's refusal to give testimony before the grand jury under a grant of immunity).

### 2. Acceptance of responsibility.

■ The district court denied Partee a two-level reduction for acceptance of responsibility because Partee had received an enhancement for obstruction of justice. As discussed above, the district court erred in granting Partee an enhancement for obstruction of justice. This reason, therefore, can-

not serve as a basis for denying Partee a two-level reduction for acceptance of responsibility. Another appropriate basis, however, may exist for denying Partee an acceptance of responsibility reduction. For instance, violating a court order to testify under a grant of immunity may support denial of an acceptance of responsibility reduction. *See United States v. Atterson*, 926 F.2d 649, 661–62 (7th Cir.1991) (affirming the denial of an acceptance of responsibility reduction based in part on defendant's reluctance to testify concerning information he had provided to the United States Attorney). Whether this conduct should prevent Partee from receiving a reduction for acceptance of responsibility is, of course, for the district court to decide. *See United States v. Sullivan*, 916 F.2d 417, 420 (7th Cir.1990) (remand ordered after this court rejected the district court's rationale for denying an acceptance of responsibility reduction, even though there was other evidence in the record that the district court could have relied on to deny the two-point reduction). *But cf., United States v. Beal*, 960 F.2d 629, 635 (7th Cir.1992); *United States v. Blas*, 947 F.2d 1320, 1330 (7th Cir. 1991) (upholding district court's refusal to find an acceptance of responsibility, even though the judge failed to specifically state his reasoning because there was more than an adequate foundation in the record for such a finding). Therefore, we remand for findings and sentencing consistent with this opinion.

### B. Dismuke's Appeal

On appeal, Dismuke argues that he was denied effective assistance of counsel at his sentencing hearing because his attorney failed to seek sentencing reductions for "aberrant behavior" and for "minor participation" in the offense. While ineffective assistance of counsel claims are best dealt

---

3. Partee also claims on appeal that even if his refusal to testify at Dismuke's trial involved "the instant offense," it was not "willful" and it did not have a significant impact on Dismuke's trial as required by Section 3C1.1. Because we hold that Partee's refusal to testify at Dismuke's trial did not involve "the instant offense" we need not consider these alternative arguments.

4. In doing so, the court noted that any other interpretation of "instant offense" would render the modifier "instant" meaningless. *Kim*, 27 F.3d at 957. *See also, United States v. Belletiere*, 971 F.2d 961, 967 (3d Cir.1992), and *United States v. Barry*, 938 F.2d 1327, 1333 (D.C.Cir. 1991) (both listing cases interpreting "instant offense" as logically meaning only "offense of conviction").

with before the district court pursuant to a 28 U.S.C. § 2255 petition, where we can resolve the claim from the record on direct appeal, we will do so. *United States v. Young,* 20 F.3d 758, 766 (7th Cir.1994). This is such a case.

In order to succeed on an ineffective assistance of counsel claim, a defendant must show that his attorney's performance was deficient and that this deficiency prejudiced the defendant. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Since we can dispose of Dismuke's claim on the prejudice component, we will address this first. *United States v. Malave,* 22 F.3d 145, 147 (7th Cir.1994) (quoting *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069) ("a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant"). To demonstrate prejudice, a defendant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different." *Id. See also Durrive v. United States,* 4 F.3d 548, 551 (7th Cir.1993) (a defendant must show that "there is a reasonable probability that but for trial counsel's errors the defendant's non-capital sentence would have been significantly less harsh"). Thus, in considering Dismuke's ineffective assistance claim, we consider whether he had a reasonable probability of receiving sentencing reductions for "aberrant behavior" and for "minor participation" in the offense.

■ This court has recognized that a defendant may be entitled to a downward departure in sentencing if the defendant's offense was a single act of aberrant behavior. *United States v. Gulley,* 992 F.2d 108, 111 (7th Cir.1993). To be considered "aberrant" within the meaning of the Guidelines, "it must be more than merely something 'out of character' or the defendant's first offense." *United States v. Carey,* 895 F.2d 318, 325 (7th Cir.1990). Aberrant behavior generally involves a "single, unplanned, spontaneous act." *United States v. Andruska,* 964 F.2d 640, 646 (7th Cir.1992). "There must be some element of abnormal or exceptional behavior." *Carey,* 895 F.2d at 325.

Dismuke's behavior was none of the above. Rather, Dismuke planned to fly to Houston to obtain cocaine and to send it to Rockford. In route to catch his plane, Dismuke had car troubles. He nevertheless continued with his plan by arranging alternative transportation and obtaining a new flight. He then proceeded to Houston, obtained drugs, packaged the drugs, and shipped them via Federal Express. These actions were far from the single, unplanned, spontaneous acts usually associated with aberrant behavior. Thus, even had Dismuke's attorney sought a reduction for aberrant behavior, there is no possibility, much less a reasonable one, that the court would have granted it. This is illustrated by the district court's comment in sentencing Dismuke: the court stated that his crime was not the result of some "casual encounter," but involved "some significant plans to arrange cocaine to be brought to Rockford from Texas." Because Dismuke has failed to demonstrate that he suffered prejudice by the failure of his attorney to seek a reduction for aberrant behavior, this portion of his ineffective assistance claim fails.

■ Dismuke's assertion that his attorney was ineffective for failing to seek a reduction for his "minor participation" based on Section 3B1.2 of the Guidelines must also fail. Section 3B1.2 authorizes a reduction of four levels for minimal participation and of two levels for minor participation in the underlying offense. A reduction for a minor participant rests on whether the defendant was "substantially less culpable than the conspiracy's other participants." *United States v. DePriest,* 6 F.3d 1201, 1214 (7th Cir.1993). Here, in sentencing Dismuke, the district court noted that Dismuke "played a significant part in bringing this cocaine to Rockford, and there's no evidence that you were just a mule.... In addition, you are older and more responsible than the other participant...." These findings by the district court, while not in response to a request for a minor participation reduction, nevertheless negate any attempt by Dismuke to demonstrate that there is a reasonable probability that he would have received such a reduction had his attorney sought one. Dismuke has

again failed to demonstrate that he suffered prejudice by the failure of his attorney to seek a "minor participation" reduction. This portion of his ineffective assistance claim also fails.

### III. Conclusion

The district court improperly enhanced Partee's sentence for obstruction of justice because his failure to testify at his co-conspirator's trial did not obstruct justice in "the instant offense." Because the district court relied solely on the obstruction enhancement to deny Partee a two-level reduction for acceptance of responsibility, the court should also reconsider the reduction on remand. We affirm Dismuke's sentence. Dismuke was not denied effective assistance of counsel at his sentencing hearing because he has not proved that he was prejudiced by his attorney's failure to request reductions for aberrant behavior or for minor participation in the conspiracy. For these and the foregoing reasons, we

AFFIRM IN PART AND REVERSE AND REMAND IN PART.