**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Steven E. BROWN and Gary L. Knox,**
**Defendants–Appellants.**

**No. 93–4061.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 8, 1994.

Decided Feb. 7, 1995.

prison guards consequently had "their hands full."

Lawrence Beaumont (argued), Office of the U.S. Atty., Urbana Div., Urbana, IL, for plaintiff-appellee.

John H. Long, and W. Scott Hanken (argued), Long, Morris, Myers & Rabin, Springfield, IL, for defendants-appellants.

Before COFFEY, ROVNER and FOREMAN,* Circuit Judges.

COFFEY, Circuit Judge.

Steven E. Brown and Gary L. Knox pleaded guilty to one count of bank fraud, in violation of 18 U.S.C. § 1344, and one count of mail fraud, in violation of 18 U.S.C. § 1341. The defendants challenge their ad-

---

* The Honorable James L. Foreman, District Judge for the Southern District of Illinois, sitting by designation.

justed offense level calculated by the district court. The defendants also challenge the district court's enhancements of their sentences pursuant to the Sentencing Guidelines. We affirm in part and vacate and remand in part.

## I. FACTS

Steven E. Brown and Gary L. Knox engaged in two fraudulent schemes. Between the months of August and October of 1990, the defendants committed bank fraud in the course of obtaining a Small Business Administration (SBA) guaranteed loan. With the intent of purchasing the Normandy Club in Pekin, Illinois, the defendants applied for a $390,000 SBA guaranteed loan at the First State Bank of Pekin. They falsely represented to the bank that they possessed the necessary $100,000 capital injection. In reality, the defendants had made a fraudulent and illegal arrangement with the seller of the Normandy Club whereby the seller agreed to kick back $130,000 of the sale proceeds and the defendants, in turn, would use the kickback funds to cover the $90,000 NSF check they had written as evidence of their capital injection.

Some years earlier, between November 1, 1986 and September 1, 1988, the defendants solicited investors in real estate properties located in Decatur, Illinois. The defendants sold shares in three properties in which, unbeknownst to the investors, they had no interest. The defendants would pay previous investors with new investor capital. This "Ponzi"[1] scheme resulted in a loss of approximately $1.9 million to investors. In the course of this scheme, the defendants mailed and caused to be delivered by the U.S. Postal Service checks to Larry Jackson, one of the investors.

Pursuant to the plea agreement entered into between the defendants and the government, the defendants agreed to plead guilty to count one, charging them with bank fraud, and count eight, charging them with mail fraud for the mailing to Larry Jackson, in exchange for the dismissal of the remaining counts. *See* 18 U.S.C. § 1341; 18 U.S.C. § 1344. The dismissed counts related to both fraudulent schemes.[2] After a sentencing hearing, the district court determined that the base offense level for both defendants was six. Based on the amount of loss involved in the mail fraud, the offense level was increased by 12. The court then enhanced the defendants' sentences by two points for each of the following: more than minimal planning; violation of a private trust; and obstruction of justice. The court declined to reduce the offense level for acceptance of responsibility. With an offense level of 24, the court sentenced each of the defendants to 63 months of imprisonment on count one and a concurrent term of 60 months on count eight. The defendants were also ordered to pay $1.9 million in restitution.

## II. DISCUSSION

The defendants' claims on appeal relate to the plea agreement entered into with the government and the district court's enhancements of their sentences. We review the district court's interpretation of plea agreements for clear error. *United States v. Yanez,* 985 F.2d 371, 376 (7th Cir.1993); *United States v. Fields,* 766 F.2d 1161 (7th Cir.1985). Similarly, in reviewing a district court's application of the Guidelines, we review for clear error. 18 U.S.C. § 3742(e); *see, e.g., United States v. Osmani,* 20 F.3d 266, 269 (7th Cir.1994); *United States v. Robinson,* 14 F.3d 1200, 1203 (7th Cir.1994); *United States v. Ojo,* 916 F.2d 388, 391 (7th Cir.1990). We will affirm the decision of the district court unless we are left with the definite and firm conviction that a mistake has been committed. *See Ojo,* 916 F.2d at 391. As for the defendants' objections to the

---

1. The classic Ponzi scheme involves individuals, like Brown and Knox, who convince investors to purchase interests in phony or unprofitable real estate partnerships, paying off old investors with the money from new investors. *See Gaskill v. Gordon,* 27 F.3d 248 (7th Cir.1994); *United States v. Holiusa,* 13 F.3d 1043 (7th Cir.1994); *United States v. Boula,* 932 F.2d 651, 652 n. 1

(7th Cir.1991); *see also Cunningham v. Brown,* 265 U.S. 1, 44 S.Ct. 424, 68 L.Ed. 873 (1924).

2. Knox additionally was charged with making false statements on a Statement of Personal History Form 912 supplied by the Small Business Administration.

district court's restitution order, we review for an abuse of discretion. *United States v. White*, 993 F.2d 147, 151 (7th Cir.1993).

## A. Plea Agreement

█ The defendants claim that pursuant to the plea agreement they were guaranteed an adjusted offense level of no more than 22. They argue that this agreement was breached when the district court calculated an adjusted offense level of 24. We disagree. First, the plea agreement itself does not specify that the government would recommend any particular offense level. In relevant part, the agreement states:

2. The defendant understands and agrees that the plea in this matter is a completely open plea, and that at the time of sentencing the government will be free to present any relevant evidence in aggravation and to make any recommendation that it deems appropriate.

. . . . .

4. The defendant understands and agrees that no recommendation made by the government or by the defendant will be binding upon the court. **The court will be free to impose any sentence, from the statutory minimum to the statutory maximum inclusive, which it deems appropriate.**

5. The sentence in this case is subject to the Sentencing Guidelines promulgated by the Sentencing Commission.

Plea Agreement at 1 (emphasis added). Further, at their plea hearing, the district court asked the defendants: "you understand this is an open plea ... there is no recommendation by the government about a sentence?" Both defendants answered yes. While the government advised the court that it believed the worst case scenario for each defendant would be level 22, the court ulti-

mately advised the defendants that "I have no idea what the sentence will be but I want to be sure that your eyes are open and that you appreciate what may come to pass."[3] *See United States v. Garcia*, 35 F.3d 1125, 1133 (7th Cir.1994) (as required by Fed. R.Crim.P. 11(c), the district court clearly instructed the defendants that the final decision as to their sentences would rest with the court); *cf. United States v. Knorr*, 942 F.2d 1217, 1220 (7th Cir.1991) (erroneous estimates of how calculations under the Sentencing Guidelines will turn out do not justify withdrawal of plea). Based on the plea agreement and the court's thorough colloquy with the defendants pursuant to Federal Rule of Criminal Procedure 11, along with the fact that no recommendation had been made as to their sentences, we conclude the government did not breach the agreement; thus the district court was not required to sentence defendants at offense level 22.[4]

## B. Amount of Loss

The defendants argue that the district court erred in grouping counts one and eight for sentencing purposes as well as including the acts (dismissed counts) that were not relevant to the offenses of conviction when calculating the total amount of loss attributable to their bank and mail frauds. The defendants assert that because the criminal activity charged in the two counts took place on different dates, the district court erred in grouping them for sentencing purposes. We disagree.

█ Section 3D1.2 of the Sentencing Guidelines provides that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group." U.S.S.G. § 3D1.2. The court must group all counts that "involve the same victim and two or more acts or transactions connected by a

---

3. When asked by the court what he thought his sentence might be, Knox told the court that he believed he might be sentenced to "[a]nywhere from 72 months to probation," and the court informed him that "20 years is the upper limit but it would be extraordinary for that to happen." *Id.* Brown informed the court that he understood that his sentence could be up to 20 years. *Id.* at 9.

4. The defendants incorrectly assert that the district court guaranteed a sentence based upon an offense level of 22. The court simply asked the assistant U.S. Attorney for the worst case scenario for the defendants' offense level, to which the assistant suggested level 22. The ultimate decision as to sentencing rests with the court and the court made that clear to the defendants at the guilty plea hearing.

common criminal objective or constituting part of a common scheme or plan." U.S.S.G. § 3D1.2(b). Further, multiple fraud convictions are grouped together under § 3D1.2(d). *United States v. Sykes,* 7 F.3d 1331, 1336 (7th Cir.1993). Count one and count eight constitute multiple fraud convictions. Thus the district court did not clearly commit error in grouping the counts. *See United States v. White,* 888 F.2d 490 (7th Cir.1989).

■ Defendants also claim that they should not be responsible for losses connected to the dismissed counts of the indictment. The government asserts that the district court did not calculate the amount of loss based on the dismissed counts but rather on the fraudulent scheme charged in count eight of the indictment. We agree. The defendants are certainly liable for losses incurred in the entire fraudulent scheme, not just the losses of Larry Jackson. The indictment alleges that the mailing to Larry Jackson was for the purposes of executing the scheme, a scheme that was charged in the indictment and admitted to in the plea agreement. The district court's finding that the losses resulting from the entire scheme should be used for calculating the amount of loss was not erroneous.[5]

■ Finally, the defendants suggest that there was no evidence to support the court's findings as to the amount of loss. As the evidence before the court reflected, the presentence report gave detailed accounts of the losses suffered by the victims, as did the indictment. The defendants do not challenge the accounts factually, but merely assert their inadequacy. We hold that the losses were sufficiently detailed and agree with the district court that the defendants' objections to the loss calculations are without merit.

## C. Acceptance of Responsibility

The district court concluded that the defendants did not qualify for a two-level reduction in offense level for acceptance of responsibility under § 3E1.1. As the Commentary to § 3E1.1 explains, the district judge should consider whether the defendant

has "truthfully admitt[ed] the conduct comprising the offense(s) of conviction, and truthfully admitt[ed] or not falsely den[ied] any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct)." U.S.S.G. § 3E1.1, comment. (n.1(a)). The commentary also states that "a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a)." *Id.* However, "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." *Id.* Note 1 of the commentary indicates that a lack of truthfulness on the part of the defendant is grounds for denying the reduction. *See Garcia,* 35 F.3d at 1133.

■ Because they pled guilty to count eight of the indictment charging mail fraud for the mailing to Larry Jackson, the defendants reason they can only be required to admit that mailing. They argue that they need only accept responsibility for the conduct underlying their offense of conviction and should not be required to affirmatively "come clean" on relevant conduct beyond the offense of conviction in order to obtain the reduction. *See United States v. Cedano–Rojas,* 999 F.2d 1175, 1182 (7th Cir.1993); *United States v. White,* 993 F.2d 147, 150–51 (7th Cir.1993). Although it is true defendants need not "come clean" on relevant conduct beyond the offense of conviction in order to obtain the reduction, *see United States v. Hammick,* 36 F.3d 594 (7th Cir. 1994), this principle is not applicable here. *Cf. United States v. Partee,* 31 F.3d 529, 531–32 (7th Cir.1994) (discussing relevant conduct relating to obstruction of justice enhancement). The defendants here affirmatively denied that they engaged in a scheme to defraud. Brown stated to the court at sentencing "I also maintain my innocence to any schemes to defraud individuals and institutions." Similarly, Knox stated to the court that "[t]here was never any common thought about defrauding anybody." *Id.* at 22; *see* Defendants' Sentencing Memoranda at 2

---

5. The district court stated that the information "marshaled by the government ... indicates a

history of mendacity and fraudulent dealings...." Sent. Tr. at 13.

("The Defendants deny that there was a scheme to defraud or that the activities complained of constituted an illegal or unlawful activity.... The fraud committed upon Larry Jackson ... was an isolated transaction arising out of the defendants' specific relationship with Larry Jackson.").

 If a defendant denies relevant conduct and the court determines such conduct occurred, the defendant cannot claim to have accepted responsibility for his actions. *United States v. Schuler,* 34 F.3d 457 (7th Cir.1994); *Cedano–Rojas,* 999 F.2d at 1182. Further, if a defendant denies the government's statement of relevant conduct, here the scheme to defraud, he thereby exposes his denials to the scrutiny of the court. *White,* 993 F.2d at 151. The district court succinctly stated that there was "no indicia of acceptance of responsibility on the part of the defendants for their activities or their conduct." We agree with the district court's finding that the defendants refused to accept the responsibility for the full extent of their criminal conduct and thus the court's determination that they were not entitled to the reduction was proper.

### D. Obstruction of Justice

 The defendants challenge the district court's enhancement of their sentences for obstruction of justice pursuant to U.S.S.G. § 3C1.1.[6] Section 3C1.1 directs a district court to increase a defendant's offense level by two if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution or sentencing of the instant offense." U.S.S.G. § 3C1.1. In the course of their scheme to defraud the First State Bank of Pekin, the defendants produced a $37,500 receipt for the alleged purchase of equipment from Action Equipment Company. The defendants never purchased equipment from the company, but received an advance for the anticipated purchase and never returned the money to the

bank. The defendants convinced Action's owner, Robert Powell, to endorse the check issued by the bank in return for $200. When Powell was questioned by the authorities he initially claimed that the transaction was legitimate but later admitted that he and the defendants had agreed upon a fictitious story to relate to the authorities to explain the purchase of the equipment.

 The defendants argue that their obstruction was not related to their offense of conviction and also attack Powell's credibility. The conduct warranting the obstruction enhancement relates to the investigation of the offense of conviction. Although the conduct justifying the enhancement was directly charged in counts four through seven, nonetheless the conduct related to the defendants' transaction with the bank. *Cf. United States v. Partee,* 31 F.3d 529 (7th Cir.1994) (enhancement not applicable if related conduct impedes the investigation or prosecution of a separate crime). Here, the defendants' agreement with Powell affected the investigation of the bank fraud, the offense of conviction. Powell's original testimony impeded the investigation of the bank fraud, necessitating the expenditure of additional time and money. Powell's conflicting versions of his dealing with the defendants led the district court to conclude that Powell initially lied because of the deal with the defendants to tell a fabricated version of the events.

### E. Minimal Planning

 The district court enhanced the defendants' offense level by two, finding that the offense involved more than minimal planning. *See* U.S.S.G. § 2F1.1(b)(2). The defendants challenge the enhancement. A sentence may be enhanced where 1) there is more planning than is typical for commission of the offense in simple form; 2) steps are taken to conceal the offense; or 3) criminal acts, each of which are not purely opportune, are repeated over a period of time. U.S.S.G. § 1B1.1, comment. (n. 1(f)). The district

---

**6.** As discussed in section II.A. of this opinion, we reject defendants' argument that because the obstruction enhancement was not specifically enumerated in their plea agreement the plea agreement was breached. The plea agreement specifi-

cally permitted the government to present any relevant evidence in aggravation and the court would make the ultimate determination on sentencing. Rec. at 17, 18.

court stated that this case "involves repeated acts over a long period of time that clearly fit within U.S.S.G. 1B1.1." We agree.

 As for the mail fraud, the defendants sought out investors, sold shares in various properties they did not own, and used this fresh money to pay dividends to previous investors. The scheme was complicated, involving repeated acts over a long period of time, and the duration and nature of the *Ponzi* scheme entailed careful planning. *See United States v. Boula,* 997 F.2d 263, 267 (7th Cir.1993) (after remand) (defendants conducted a complex and massive mail fraud scheme that duped thousands of investors, resulting in a loss of $7 million); *United States v. Boula,* 932 F.2d 651, 654 (7th Cir. 1991) (prior proceeding) (*Ponzi* scheme involved more than minimal planning). The defendants cleverly urge us to direct our attention only to the February 15, 1988 "simple" mailing to Larry Jackson. Jackson was merely one investor who received checks from the defendants. Count eight of the indictment charged that the defendants "did knowingly devise a scheme and artifice to defraud and for obtaining money and other property by means of false and fraudulent pretenses, representations and promises from numerous and diverse persons throughout the Central District of Illinois and elsewhere...." The indictment goes on to describe the scheme in detail. By pleading guilty to count eight, the defendants acknowledged a scheme to defraud many investors over a two year period, not just Larry Jackson. *See United States v. Panadero,* 7 F.3d 691, 696 (7th Cir.1993) ("A complex scheme or repeated incidents of fraud are indicative of an intention and potential to do considerable harm.").

### F. Position of Trust

 The defendants claim the district court erred in enhancing their sentences for abusing a position of private trust.[7] Pursuant to § 3B1.3, a court must add two offense levels "if the defendant abused a position of public or private trust ... in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. The commentary to this section provides:

> "Public or private trust" refers to a position of public or private trust characterized by professional or managerial discretion.... Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily nondiscretionary in nature.... [T]he position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons. This adjustment, for example, would apply in the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme....

U.S.S.G. § 3B1.1, comment. (n. 1). We apply a two-part test to determine if the enhancement applies: 1) whether the defendant occupied a position of trust; and 2) whether his abuse of the position of trust significantly facilitated the crime. *United States v. Boyle,* 10 F.3d 485, 488 (7th Cir.1993). We conclude that the district court erred in applying the two level enhancement and therefore vacate its application.

 The determination that a defendant occupies a position of trust "depends on whether the defendant has 'access or authority over valuable things.'" *Id.* at 489 (quoting *United States v. Lamb,* 6 F.3d 415, 421 (7th Cir.1993)). Looking to the nature of the relationship, we believe that the defendants simply maintained a commercial relationship with the victims rather than a fiduciary one. *See United States v. Kosth,* 943 F.2d 798 (7th Cir.1991) (defendant used a merchant account at a bank to process orders from customers, court found defendants did not abuse a position of trust); *cf. United States v. Lamb,* 6 F.3d 415 (7th Cir.1993) (postal carrier who stole mail occupies a position of trust because of access to valuable items of mail). The relationship here merely provided the

---

7. In adopting the presentence report, the district court held that the enhancement "certainly applies to victims of the mail fraud scheme where

you have superiority of influence on one side and reliance on the other and misrepresentations made." Sent. Tr. at 13.

defendants with an opportunity that could as easily have been afforded to persons other than the defendants. The defendants possessed no trait or special skill [8] that made it easier to commit the crime, and their relationship with the victims was not that of a fiduciary. *See United States v. Ashman,* 979 F.2d 469 (7th Cir.1992) ("The essence of a fiduciary relationship is that the fiduciary agrees to act as his principal's alter ego rather than to assume the standard arm's length stance of traders in a market.").

## G. Restitution

The defendants assert that the district court abused its discretion in ordering them to pay restitution in the amount of $1,918,500. They claim that they should only be liable for the losses suffered by Larry Jackson as a result of the mail fraud scheme as articulated in count eight of the indictment. The Guidelines contemplate full restitution whenever possible and the defendant must establish that full restitution is unwarranted under the circumstances to reduce or alleviate that obligation. *White,* 993 F.2d at 151; 18 U.S.C. § 3663(a)(2) (Victim and Witness Protection Act of 1982 (VWPA)).

The Supreme Court in *Hughey v. United States,* 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), held that restitution under the VWPA can be awarded only "for the loss caused by the specific conduct that is the basis of the offense of conviction." The defendants argue that *Hughey* mandates they pay restitution only to Larry Jackson, not the other victims of the mail fraud scheme. Our decision in *United States v. Bennett,* 943 F.2d 738, 740 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2970, 119 L.Ed.2d 590 (1992), and its progeny control this case. In *Bennett,* we held that because a scheme to defraud is an element of the offense of mail fraud, a conviction under that statute allows restitution for all victims of that scheme. 943 F.2d at 740. Therefore,

"actions pursuant to that scheme should be considered 'conduct that is the basis of the offense of conviction.'" *Id.* (quoting *Hughey* ). *Hughey* also requires that restitution be allowed only for the *specific* conduct that is the basis of the offense of conviction. In their plea agreements the defendants pled guilty to a scheme to defraud commencing in November of 1986 and lasting until September of 1988, as alleged in the indictment. Reading the indictment and the plea agreement together, which describe the schemes in detail, we conclude that the specificity requirement has been met here. *United States v. Turino,* 978 F.2d 315, 318–19 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2969, 125 L.Ed.2d 668 (1993); *United States v. Langer,* 962 F.2d 592, 601 (7th Cir.1992).

The district court had the authority to order restitution for the losses caused by the entire fraud, not just the specific acts of fraud to which the defendants pled guilty. *United States v. Brothers,* 955 F.2d 493, 497 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 142, 121 L.Ed.2d 94 (1992). The defendants alternatively argue that *Bennett* and its progeny were incorrectly decided. We decline the defendants' invitation to revisit our decision set forth in *Bennett* and affirmed in *Turino, Langer* and *Brothers.*[9]

## III. Conclusion

We conclude that the district court did not err in finding that the defendants' plea agreements were not breached because the defendants entered into open plea agreements and the government did not recommend any particular sentence to the court. The court did not err in imposing restitution or in its sentencing calculations, with the exception of the two level increase for abuse of a position of trust. Therefore we VACATE the defendants' sentences as to the enhance-

---

8. Section 3B1.3 provides for a two level enhancement if a defendant "abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3.

9. We reject defendants' charge that the district court did not support with specificity the defendants' conduct and the losses suffered by the victims of the fraud to warrant its order. The indictment spells out the acts committed by the defendants and the losses suffered by the victims with sufficient specificity.

ment section only for an abuse of a position of trust and REMAND for resentencing.