UNITED STATES of America,
Plaintiff–Appellee,

v.

William J. SLATER, Defendant–
Appellant.

No. 00–2767.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 8, 2000.

Decided Jan. 18, 2001.

Before FLAUM, Chief Circuit Judge,
RIPPLE, EVANS, Circuit Judges.

## ORDER

William J. Slater waived indictment and pleaded guilty to a one-count criminal information charging him with bank fraud in violation of 18 U.S.C. § 1344. In a written plea agreement he admitted defrauding four banks and one finance company out of about $1.5 million. But his plea agreement contained a boo-boo. It said his guideline range would be 27 to 33 months, but that span overlooked a critical fact: Slater's scheme affected a financial institution, which triggered U.S.S.G. § 2F1.1(b)(7)(B), and that increased his range to 46–57 months.

Three months after Slater entered his guilty plea and a week before he was scheduled to appear for sentencing, an attorney for the government discovered the omission, and a letter was faxed to Slater's

lawyer telling him that the sentencing range in the agreement was wrong and that a stiffer penalty was called for.

When the time for sentencing rolled around (the proceeding was adjourned, but we can ignore that detail), Slater did not contest the applicability of U.S.S.G. § 2F1.1(b)(7)(B) to his case. Instead, he asserted its application constituted a violation of his plea agreement with the government. In response to this assertion, the government offered to allow him to withdraw his guilty plea, an offer Slater rejected, saying he was "not here to withdraw his guilty plea." Instead, his counsel said the only thing Slater wanted as relief for the alleged breach of the plea agreement was freedom to argue a motion for a downward departure that he had filed.

Slater's motion sought an unspecified downward departure "from this unforseen application of the guidelines," citing several grounds, including things like his health, military service, remorse, and family ties. Despite the fact that the plea agreement expressly prohibited the making of a downward departure motion, the government did not assert a procedural bar since the motion was clearly prompted by the mistake in calculating the sentencing range. Without a procedural objection by the government, the district court heard the motion on the merits. The motion was denied and Slater was sentenced to a term of 46 months.

Slater's primary argument on appeal is that the government "breached" the plea agreement. His remedy, it is argued, is specific performance: vacation of his sentence and a remand for resentencing (before a different judge) limited, it seems, to a point within the plea agreement's original—and erroneous—range of 27 to 33 months. This plea fails for a host of reasons.

■ For one thing, the plea agreement was not "breached." Sure, it contained an error, but correcting that error does not a breach make. Besides, the agreement itself described the sentencing range it contained as a "preliminary calculation," a clear signal that revisions were possible. *See United States v. Brown*, 47 F.3d 198, 202 (7th Cir.1995). Given this scenario, Slater's only remedy was to ask to withdraw his plea, something he didn't want to do. *See United States v. Williams*, 198 F.3d 988 (7th Cir.1999). Asking to be sentenced under an inaccurate sentencing range is asking way too much.

For another thing, Slater cannot seek specific performance because he expressly declined to ask for it in the district court. All he sought there was a chance (which he got) to argue for a downward departure. This election is an unmistakable waiver of any right to seek specific performance.

■ Slater's second claim on appeal, that he didn't deserve a 2–level "leadership" enhancement under U.S.S.G. § 3B1.1(c), is meritless. To invoke the enhancement, all the district court had to do was find that Slater directed the actions of at least one other "criminally responsible" participant in the fraud. As to this point, not only did Slater admit in the plea agreement that he directed other employees to prepare false documents used in his fraud, but the stipulated testimony of two of these employees proved that each knew of the criminal nature of Slater's scheme and intentionally took actions which furthered it. By knowingly assisting the criminal scheme, both employees were "criminally responsible" for the commission of his offense even though neither was charged with the crime. The leadership enhancement, therefore, was a proper fit.

AFFIRMED.