151 F.3d 1034
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES OF AMERICA, Plaintiff/Appellee,
v.
Donnell WHITE, Defendant/Appellant.
 No. 98-1532.
 United States Court of Appeals,
Seventh Circuit.
 Argued July 8, 1998.
Decided July 10, 1998.
 
 Appeal from the United States District Court for the Eastern District of Wisconsin. No. 97-CR-18, Rudolph T. Randa, Judge.
 Before Hon. JESSE E. ESCHBACH, Hon. JOEL M. FLAUM, Hon. ILANA DIAMOND ROVNER, Circuit Judges.
 ORDER
 Donnell White pleaded guilty to four counts of bank robbery in violation of 18 U.S.C. § 2113(a). The district court sentenced White to 130 months' incarceration and three years' supervised release. On appeal, White asserts that the district court clearly erred by finding that his flight from police officers after he was arrested constituted obstruction of justice under U.S.S.G. § 3C1.1.
 White had already committed three bank robberies when he robbed Liberty Bank in Milwaukee, Wisconsin, on January 21, 1997. White tendered a note to a bank teller stating "I have four pipe bombs. This is a robbery. I will blow all of us up. I want $1,700.00 now." (PSR at p 13). After White left the bank, several bank employees stopped a nearby police officer and explained that the bank had been robbed. The officer searched the area for the robbery suspect, apprehending White within minutes. The police officer and White returned to the bank after which three bank employees positively identified White as the robber, including the victim teller.
 The police officer then took White to the Milwaukee Police Department Headquarters where he was booked. After White was arrested, he complained of breathing problems due to injuries he sustained after he robbed the bank. The police officers took White to a Milwaukee hospital for treatment. While still in custody, White was X-rayed at the hospital for scrapes on his chest which occurred after he jumped off of a wall when running from the police. White was not handcuffed at the time. While the officer assigned to guard White was distracted by a telephone call, White escaped from police custody. Milwaukee police officers found White four days later at his sister's house in Milwaukee hiding under a bed, dressed in women's clothing.
 This court reviews the district court's findings under U.S.S.G. § 3C1.1 for clear error, giving due deference to the district court's application of the guidelines to the facts of the case. United States v. Porter, No. 97-1751, slip op. at 9 (7th Cir. May 14, 1998). The defendant must convince this court to a certainty that the district court's findings under § 3C1.1 were incorrect - suggesting the possibility of error will not suffice. United States v. Ramunno, 133 F.3d 476, 480-81 (7th Cir.1998).
 On appeal, White argues that his flight from the hospital and apprehension four days later while in disguise was conduct that does not constitute obstruction of justice under U.S.S.G. § 3C1.1. Section 3C1.1 provides that the sentencing court shall increase the defendant's offense level by two levels if he "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1. Thus, in order for § 3C1.1 to apply, the defendant's conduct must indicate the willful intent to obstruct justice. United States v. Draves, 103 F.3d 1328, 1338 (7th Cir.), cert. denied, --- U.S. ----, 117 S.Ct. 2528, 138 L.Ed.2d 1028 (1997). White relies on commentary in § 3C1.1 which states that "avoiding or fleeing arrest" ordinarily does not warrant the application of this enhancement. U.S.S.G. § 3C1.1, comment. (n.4(d)). This court has determined that escape from formal custody alone is insufficient to support an obstruction of justice enhancement under § 3C1.1, comment. (n.4(d)). Draves, 103 F.3d at 1337. The Draves court concluded, however, that "the proper yardstick for a § 3C1.1 enhancement is whether the defendant's departure from the scene of arrest was spontaneous or calculated." Id. at 1338. If the defendant's actions amount to a calculated and deliberate plan to evade the police, the defendant's conduct qualifies as an obstruction of justice under § 3C1.1. Id.; Porter, No. 97-1751, slip op. at 12.
 
 
 1
 In the recent Porter decision, this court affirmed the district court's finding that a defendant who moved his family from Indiana to Tennessee, rented a mobile home under a fictitious name, changed his appearance, and fabricated a new identity, had calculated a deliberate plan to evade the police, and thus, obstructed justice for the purposes of § 3C1.1. Porter, No. 97-1751, slip op. at 11-12. On the other hand, in Draves, this court agreed with the district court that the defendant's post-arrest flight from police officers was spontaneous because the defendant was panicked when the officers arrived, fled from the police on foot "without deliberation," and was found three houses away from the scene of his arrest. Draves, 103 F.3d at 1337.
 
 
 2
 Here, the district court distinguished White's case from the facts in Draves.[1] In explaining the difference between White and the defendant in Draves, the district court stated:
 
 
 3
 [T]he Police in Draves are occupied with another Defendant at about the same time that this flight occurred. The facts in our case show that there was an arrest, in custody, and then a delay of significant time. That is, when I say significant time, the conveyance to the hospital. The time to think about his situation. That is, the Defendant [sic] to think about his situation in the back of a Police car or Police vehicle. The checking into the hospital, the going up to the area where the ultimate flight occurred, after the distraction of the Officer. That doesn't evince a sudden discovery by the Defendant that he is now in the power of the Police. It gave the Defendant a lot of opportunity to find a way out of the situation that he had been placed in and--placed in for a period of time prior to the actual action. (Sent. Tr. at 10-11).
 
 
 4
 The district court also noted that the time between White's flight and his evasion from authorities, i.e., four days, distinguished White's case from Draves because the defendant in Draves was apprehended immediately after his flight from police. Last, the district court concluded White's attempt at disguising himself and hiding under a bed at his sister's house was evidence of "calculation and forethought to remain out of custody," and thus, amounted to willful intent as required under § 3C1.1.
 
 
 5
 Giving due deference to the district court's factual findings, the district court did not clearly err in determining that White's conduct constituted the willful intent to obstruct justice. Based on Draves, the district court found that White's actions were not instinctive or spontaneous, but evidenced a calculated and deliberate plan to evade the police. Indeed, it can be reasonably inferred from White's conduct - fleeing the hospital, evading arrest for four days, and disguising himself in women's clothing - that he intended to mislead and deceive authorities. See Draves, 103 F.3d at 1337 (citing United States v. Walcott, 61 F.3d 635, 639 (8th Cir.1995)).
 
 
 6
 Although the defendant's actions in Porter were more extreme than White's conduct - Porter moved his family to a different state, changed his appearance, used a fictitious name, and changed his identity while eluding police for approximately two weeks - the district court here properly found that White willfully evaded the police. See Porter, No. 97-1751, slip op. at 11-12. In Porter, this court relied on Draves in concluding that a calculated evasion of the police qualifies as willful obstruction under § 3C1.1. Id. at 11-12. As such, White's hiding from police for four days and disguising himself qualifies as willful intent. In addition, both Porter and Draves emphasize that the "ultimate question" is whether the defendant's conduct reflects willful intent to obstruct justice. Id. at 10; Draves, 103 F.3d at 1338. Neither decision delineates definitive parameters concerning the duration of the evasion, where the defendant was located, or whether the defendant must take on a new identity or appearance, in order for § 3C1.1 to apply in a flight situation. See Porter, No. 97-1751, slip op. at 10; Draves, 103 F.3d at 1338. Here, the district court made the fact-specific determination that White had the willful intent to obstruct justice by fleeing from police, answering the "ultimate question" under the enhancement.
 
 
 7
 Conversely, White asserts that he had the "natural inclination to leave" and asserts that hiding in women's clothing and being found four days later "suggests he was not trying very hard to stay away" from the police. (Appellant's Brief at 9). White also claims that he did not fake his injuries or deliberately place himself in the position of being uncuffed in the hospital, and he was not responsible for the police officer's distraction in the hospital. As such, White characterizes his situation as an "invitation to flee." (Appellant's Brief at 7). Although it can be argued that these circumstances support White's argument that his flight from officers was spontaneous, the fortuitous circumstances do not diminish the fact that White eluded capture for four days. In addition, White gives little, if any, factual or legal support to his arguments. As such, White's suggestion of the possibility of error is not enough to show that the district court clearly erred. See Ramunno, 133 F.3d at 480-81.
 
 
 8
 Giving due deference to the district court's finding that White obstructed justice for the purposes of § 3C1.1, the district court did not clearly error. Therefore, the district court judgment is
 
 
 9
 AFFIRMED.
 
 
 
 [1]
 United States v. Porter, No. 97-1751, slip op. (7th Cir. May 14, 1998), was decided approximately two months after White's sentencing hearing