In the

# United States Court of Appeals
## For the Seventh Circuit

---

Nos. 01-3558, 01-3559 & 01-3683

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KAMORUDEEN SOWEMIMO,
ROBERT THOMAS, and
CORNELL GREEN,

*Defendants-Appellants.*

---

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 CR 3—**Suzanne B. Conlon**, *Judge.*

---

ARGUED OCTOBER 28, 2002—DECIDED JULY 7, 2003

---

Before KANNE, DIANE P. WOOD, and EVANS, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* This appeal comes to us from three members of a large heroin distribution organization in Chicago. Cornell Green, the organization's mastermind and leader, Robert Thomas, one of his key supervisors, and Kamorudeen Sowemimo, a Nigerian heroin importer, were indicted along with twelve other members of the organization. Green and Sowemimo each pleaded guilty to conspiracy to possess with intent to distribute heroin, the first count of a nineteen-count indictment. Thomas tried his luck before the jury. Green

and Sowemimo have both appealed various aspects of their plea agreements and sentences, and Green has added a challenge to the statute under which he was convicted. Thomas, who was convicted of conspiracy to possess with intent to distribute heroin, appeals the district court's application of the U.S. Sentencing Guidelines in his case. Finding no error in the district court's decisions, we affirm in all three cases.

**I**

Cornell Green headed up an extensive heroin distribution organization from 1993 until he was arrested in 2001. His organization employed street level dealers whose efforts were overseen by supervisors—also employed by Green—including co-defendant Robert Thomas. At the organization's peak, it was moving approximately 100 grams of heroin a day, for which it was receiving about $10,000. Green and many members of his organization were affiliated with the Mickey Cobras street gang, in which Green held the rank of "King," the second highest position in the gang. Green's gang ties ensured that his dealers could sell drugs in territory controlled by the gang.

The heroin that Green's dealers sold was wholesale, high-purity product imported by Nigerian drug dealers, including co-defendant Kamorudeen Sowemimo. Green bought heroin from Sowemimo in 100- to 300-gram quantities, at an average cost of $10,500 per 100 grams. He then cut the pure heroin with a diluting agent to increase his profits and make the drugs fit for human consumption. Green's heroin was reputed to be superior to comparably priced drugs on the market. In fact, his reputation for mixing high quality heroin earned him the nickname "Chef-Boy-R-Dee," or "the Chef," among Chicago's heroin users and dealers.

Although the exact dates of Thomas's involvement in Green's heroin network are disputed, it appears that he worked from some time in the summer of 1999 until the end of that year. Green testified at Thomas's trial that Thomas worked for him for seven to eight months. During this time Thomas worked as a supervisor, a job that involved handling routine problems among the street dealers and collecting the proceeds of their drug sales for Green. On an average day Thomas collected between $5,000 and $6,000 from Green's various dealers. He continued to work for Green until some time in early 2000. With the help of his vast network of dealers and supervisors, Green's narcotics business flourished. He amassed an impressive collection of real estate, cars and luxury items with the profits he earned.

Green's heroin empire came tumbling down in January 2001, when he was arrested. On May 3, 2001, Green and fourteen members of his organization were named in a nineteen-count indictment that charged them with various narcotics-related offenses. Of the fifteen who were indicted, all but Green, Thomas and Sowemimo pleaded guilty long before trial. Green eventually experienced a change of heart, and on June 27, 2001, he entered a guilty plea to Count I of the indictment and agreed to cooperate fully with the authorities in exchange for a government motion for a downward departure from the Sentencing Guidelines' mandatory minimum sentence. Green also agreed to a forfeiture judgment of $1,000,000, which included various cars and real property obtained with drug proceeds. A bit later, Sowemimo also decided to plead guilty to the first count of the indictment. He did so on July 9, 2001, at the end of the first day of a two-day trial. The following day, Thomas was convicted by the jury of conspiracy to distribute heroin under 21 U.S.C. § 846. The district judge sentenced all three on September 14, 2001. Green and Thomas each received 360-month

sentences and Sowemimo was sentenced to 168 months in prison.

## II

The appellants raise several arguments for our consideration. Because Green and Sowemimo pleaded guilty and have no desire to withdraw those pleas, their arguments on appeal are limited to challenges to the constitutionality of the statute under which they were convicted and to the sentences they received.

## A

Green challenges the constitutionality of 21 U.S.C. § 841(b), on the ground that it is inconsistent with the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). This is an argument that we may easily dispose of. First, although the government failed to point this out, Green's guilty plea did not reserve this as an argument for appeal, and it is thus waived. See, *e.g.*, *United States v. Broce*, 488 U.S. 563, 569 (1989) (guilty plea waived possible double jeopardy claim). Second, even if Green has preserved the point somehow, it could not prevail: this court has rejected exactly this argument on several occasions, most recently in *United States v. Arocho*, 305 F.3d 627, 638 (7th Cir. 2002), and *United States v. Martin*, 287 F.3d 609, 615-16 (7th Cir. 2002). See also *United States v. Brough*, 243 F.3d 1078 (7th Cir.), *cert. denied*, 534 U.S. 889 (2001) (finding § 841 constitutional). Green presents no reason why these decisions should be revisited, and we decline to overrule precedent or to part ways with the other courts of appeals that have also upheld the constitutionality of § 841(b). See, *e.g.*, *United States v. Outen*, 286 F.3d 622, 634 (2d Cir. 2002); *United States v. Palmer*, 297 F.3d 760, 767 (8th Cir. 2002); *United*

*States v. Buckland*, 277 F.3d 1173, 1177 n.1 (9th Cir. 2002) (*en banc*) (collecting cases from other circuits).

**B**

Next, Green argues that his sentence should be vacated because the government failed to move for a downward departure pursuant to § 5K1.1 of the U.S. Sentencing Guidelines (U.S.S.G.) as it agreed to do in the parties' plea agreement if Green cooperated fully in this and other investigations. He also believes that the district court erred in not compelling the government to file such a motion. While Green concedes that his cooperation stopped shortly after his co-defendants' trial, he believes nonetheless that he was entitled to benefit from his earlier assistance. In his view, the government received a windfall by first reaping the benefits of his full cooperation prior to and during Sowemimo's and Thomas's trial, and then failing to "pay" for that benefit by seeking the promised downward departure for Green. We review Green's interpretation of the plea agreement *de novo*. *United States v. Lezine*, 166 F.3d 895, 900 (7th Cir. 1999).

The government contends that Green's argument is waived because he conceded to the district court that he stopped cooperating with the government, which is a clear breach of the terms of the plea agreement. Therefore, the government asserts, he cannot now claim that he was entitled to the benefit of the terms of the plea bargain. At the very least the government believes that Green forfeited this issue by failing to argue below that the government was obliged to move for a downward departure from the Sentencing Guidelines at the time of sentencing. See, *e.g.*, *United States v. Ramunno*, 133 F.3d 476, 484 (7th Cir. 1998). Accordingly, the government asks that at most we review this issue for plain error. *Id*.

In the end it does not matter whether Green knowingly relinquished his right to bring this argument (waiver), or whether he merely failed to raise the argument in a timely manner (forfeiture), because either way he cannot prevail. See *United States v. Olano*, 507 U.S. 725, 734 (1993) (explaining difference between waiver and forfeiture). Green cannot get around the fact that he did not comply with the terms of his plea agreement. Paragraph 12 of the plea agreement states that Green "willfully and truthfully cooperate with the government in any matter in which he is called upon to cooperate." The agreement also specifies that the "defendant further agrees to cooperate fully and truthfully in identifying and forfeiting tainted assets subject to forfeiture, regardless where they may have been transferred or hidden." *Id.* at ¶ 15. At sentencing, Green's lawyers acknowledged that he stopped cooperating shortly after Sowemimo's and Thomas's trial. They then asked the court to postpone sentencing to enable Green to resume his cooperation. In addition to relying on this cessation of cooperation (whether it was temporary or permanent), the government also claims that Green was not forthright about the true extent of his tainted assets, although it concedes that it lacks hard proof that Green has anything more squirreled away.

Even if Green was completely truthful about his tainted assets, it remains the case that he has otherwise admitted to violating the terms of the plea agreement. This is enough to preclude him from prevailing on an argument that he had a right to a government motion for a downward departure. This is so because both parties acknowledge that plea agreements are interpreted and enforced as a matter of contract law. *Ramunno*, 133 F.3d at 484. It is a long-established principle of contract law that one party's failure to fulfill its end of the bargain relieves the other party of its obligations under the agree-

ment. *Id*. Although the government may not unilaterally decide whether a defendant has substantially breached the terms of a plea agreement in deciding whether it is bound to move for a downward departure per the parties' agreement, see *United States v. Frazier*, 213 F.3d 409, 419 (7th Cir.), *cert. denied sub nom.*, *Walker v. United States*, 531 U.S. 1015 (2000), here, the fact that Green admitted that he did not fully cooperate with the government eliminates the need to hold an evidentiary hearing on the question of breach and relieves the government of its obligation to move for the downward departure. See *Wade v. United States*, 504 U.S. 181, 186 (1992) (holding that defendant is not entitled to evidentiary hearing on question of breach of substantial terms of plea agreement without making "a 'substantial threshold showing'").

That Green's cooperation was significant before he experienced a change of heart—and this is not disputed by either side—does not change the fact that he failed to continue to cooperate when he was asked to do so. See, *e.g.*, *Ricketts v. Adamson*, 483 U.S. 1, 10 (1987) (failure to fulfill terms of plea agreement, despite initial cooperation, may constitute breach). The parties did not include any provisions for partial fulfillment of the terms of the plea bargain and we will not write such a clause into their agreement.

The law with respect to a defendant's entitlement to the third-level adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1 changed significantly with the passage of the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 (the PROTECT Act). See Pub. L. No. 108-21, § 401(g), 117 Stat. 650, 671 (April 30, 2003). Under the new statute, the additional adjustment of one level may be granted only upon the prosecutor's motion, and only at the pretrial stage. We have no need to decide here whether the PROTECT Act applies to a pending case like Green's, however, be-

cause he has not shown an entitlement to the adjustment even under the prior law.

Green had one remaining option after the district court refused to postpone sentencing in his case to enable him to demonstrate his renewed willingness to cooperate fully. The court invited Green to resume cooperation after he was sentenced. Had he chosen to do so, the government could have moved to reduce his sentence within one year of the date of sentencing under Rule 35(b) of the Federal Rules of Criminal Procedure. Although both the government and the court were open to this possibility, the record does not indicate that Green in fact resumed cooperation.

## C

Like Green, Sowemimo challenges his sentence. He believes that the district court erred when it denied him an additional one-point reduction in the level of his offense pursuant to U.S.S.G. § 3E1.1(b) for timely acceptance of responsibility. Whether a defendant meets the requirements of § 3E1.1(b) turns on questions of fact; therefore we review the district court's refusal to grant an additional one-point sentencing reduction under the clear error standard. *United States v. Bosque*, 312 F.3d 313, 316 (7th Cir. 2002); *United States v. Nielsen*, 232 F.3d 581, 583 (7th Cir. 2000). See also U.S.S.G. § 3E1.1, Application Note 5.

A defendant who accepts responsibility for her criminal activity may receive up to a three-point reduction under the Sentencing Guidelines. To receive two of the three points the defendant must "clearly demonstrate[ ] acceptance of responsibility" for the offense charged. See U.S.S.G. § 3E1.1(a). Under the law at the time of this trial, defendants were entitled to an additional one-point reduction if they qualified for the two-point reduction under

§ 3E1.1(a), but only if their offense level prior to this reduction was level 16 or greater, and if they either "timely provide[d] complete information to the government concerning [their] own involvement in the offense," § 3E1.1(b)(1) or "timely notified the authorities of [their] intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently." § 3E1.1(b)(2).

At sentencing, the district court granted Sowemimo a two-point reduction under § 3E1.1(a) because of his overall acceptance of responsibility as evidenced by his guilty plea. The court refused to reduce further his offense level by one point for the timeliness of his acceptance of responsibility because Sowemimo failed to enter his guilty plea prior to the pretrial conference as the court asked the defendants who wished to so plead to do, and as all of the defendants except Green, Sowemimo and Thomas actually did.

The additional one-point reduction under § 3E1.1(b) is meant to reward conduct that "occur[s] particularly early in the case." U.S.S.G. § 3E1.1(b), Application Note 6; see also *Nielsen*, 232 F.3d at 583. As the Commentary to this section of the Sentencing Guidelines explains,

> [T]o qualify under subsection (b)(2), the defendant must have notified authorities of his intention to enter a plea of guilty at a sufficiently early point in the process so that the government may avoid preparing for trial and the court may schedule its calendar efficiently.

*Id.* The district court found Sowemimo's decision to plead guilty after the first day of a two-day trial not only an inefficient use of its resources, but "acutely disruptive" of the court's schedule. This is the type of factual determination that we do not disturb on appellate review, see, *e.g.*,

*United States v. Wallace*, 114 F.3d 652, 655 (7th Cir. 1997), and it is fatal to Sowemimo's argument. (Once again, because Sowemimo loses even under the prior law, we have no need to decide whether the stricter requirements for the additional adjustment imposed by the PROTECT Act apply here. We note, however, that it may be problematic to apply retroactively the requirement of a government motion.)

In the alternative, Sowemimo believes that he is entitled to an additional one-point reduction under § 3E1.1(b)(1) because of the post-arrest statements that he made concerning his heroin sales to Green. The problem with this argument is that the Sentencing Guidelines offer an additional point for the timely provision of "*complete* information," *id.* (emphasis added), and Sowemimo subsequently recanted some of his post-arrest admission. Furthermore, the information that Sowemimo provided was limited to his role in the heroin network. He provided the government with no information about his heroin suppliers or how the drugs entered the United States. The government argues that these two shortcomings mean Sowemimo may not benefit from the one point reduction under § 3E1.1(b)(1) because he has not provided complete information. We agree. *Cf. United States v. Francis*, 39 F.3d 803, 809 (7th Cir. 1994).

**D**

Finally, Robert Thomas, the only member of Cornell Green's heroin operation who was actually tried and convicted by a jury, wants to set aside the district court's drug quantity calculations. Initially, we must decide whether Thomas has preserved this argument for review on appeal. In his opening brief, Thomas candidly acknowledged that the specific argument raised on appeal was not pressed in the district court. Acting *pro se* despite

the fact that he was still represented by counsel at the time, Thomas filed two motions in the district court challenging the quantity of drugs that were attributed to him in the Presentence Investigation Report (PSR). The district judge understood these motions as raising an objection to the amount of heroin attributed to Thomas, even if the objections were less than clearly articulated in his *pro se* filings. Our review of the transcript satisfies us that Thomas did enough to raise this point before the district court, and we thus are free to consider his argument on the merits.

Even so, Thomas has a difficult task, because we will reverse a district court's drug quantity calculations only if they are clearly erroneous. *United States v. Noble*, 246 F.3d 946, 951 (7th Cir. 2001). To meet this standard, Thomas must convince us that a mistake has been made in the sense that none of the evidence in the record supports the district court's drug quantity calculations. See *United States v. Martin*, 287 F.3d 609, 616 (7th Cir. 2002), *cert. denied sub nom.*, *Alicea v. United States*, 123 S. Ct. 116 (2002).

In support of his claim that the district court erred, Thomas argues that the judge failed to arrive at the most conservative estimate of heroin that may be attributed to him. In his view, if the district court had taken into consideration the fact that Green cut the pure heroin with a filler before selling the drugs, the drug quantity estimate would have been in the range of 7.8 kilograms. What Thomas ignores is the fact that the countable weight for drug quantity calculations includes any mixture or substance containing a detectable quantity of the drug. See U.S.S.G. § 2D1.1(c), Note (A). The district court was thus obliged to consider the filler, as well as the pure heroin, in making its calculations. We find ample evidence in the record to support the estimate that the district court reached in this case (which was

by no means the highest number the court could have chosen).

## III

Finding no merit in any of appellants' arguments, we AFFIRM the judgments of the district court.

A true Copy:

     Teste:

 

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*